[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
 The Parties
This action was commenced in 1997 by the plaintiff Vincent Larobina (Larobina), who has acted pro se throughout, seeking damages from Ronald Kadar (Kadar), a deputy sheriff in Fairfield County; Goldman, Gruber, Woods Miller, LLC (Goldman Gruder), a law firm; and Ernest Breiner and members of his family who were Goldman Gruder's clients. At one time the Breiners were the landlords of the premises occupied by Larobina's business, Vin's Key Club, an athletic and exercise facility located at 1620 Post Road East, Westport, CT (the premises). Subsequently, Larobina CT Page 10719 withdrew his complaint against Goldman Gruder and the Breiners. In 1999 Kadar served a third party complaint on Goldman Gruder and Ernest Breiner (Breiner).
 The Pleadings
In his revised amended complaint, Larobina alleges that on October 3, 1997, Sheriff Kadar served a writ of execution in a summary process action. The writ directed Larobina and Vin's Key Club to remove themselves, their possessions and personal effects from the premises on or before October 7, 1997, at 1 p.m. The writ further directed that if the premises was not vacated by that date and time, remaining possessions and personal effects would be removed and placed on to the street. The complaint further alleges that when Kadar took possession of the premises, Larobina's possessions and personal effects which remained, instead of being placed on to the street, were left in the custody of Breiner. Larobina claims that these actions amounted to: (1) a wrongful seizure of property; (2) fraudulent misrepresentation; (3) negligence, (4) a violation of the statute governing return of service; and (5) slander (arising out of a videotape purportedly made to document and inventory the property at issue). Larobina seeks money damages, including double damages pursuant to General Statutes. § 6-32.
In his answer, Kadar denies the material allegations of the complaint and asserts several special defenses, one of which is that any damages suffered by Larobina were the result of his own actions or inaction. Also, in his third-party complaint, Kadar alleges that he was acting under the direction of Attorney Matthew Woods (Woods) of Goldman Gruder, Breiner's attorney in the summary process action. Kadar further alleges that if he is held liable to Larobina, he should be indemnified by Breiner and by Goldman Gruder, who directed Breiner's actions, under the active/passive theory of indemnification. The first party and third party actions were tried to the court on May 8 and 9, 2001. Proposed findings of fact and conclusions of law were filed on behalf of the parties by May 30, 2001.
 The Facts
This action arises out of a disputed commercial lease agreement between the Breiners and Larobina dating back to 1991 and a change in the law relating to writs of execution in commercial summary process actions which went into effect October 1, 1997. Briefly stated, in 1991 the Breiners and Vin's Key Club executed a lease for the premises wherein Key Club's obligations were personally guaranteed by Larobina. A lengthy dispute over the lease ensued during which time neither Larobina, nor the now defunct Key Club, paid any rent. This dispute culminated in a CT Page 10720 decision by the Superior Court rendering possession of the premises to landlord Breiner. Breiner v. Vin's Key Club, judicial district of Stamford/Norwalk at Stamford, Docket No. CV 94 145699 (April 17, 1996,D'Andrea, J.). The Superior Court decision was upheld by the Appellate Court; see Breiner v. Vin's Key Club, Inc. 45 Conn. App. 925, 696 A.2d 1324
(1997) and ultimately certification was denied by the Supreme Court. SeeBreiner v. Vin's Key Club, Inc., 243 Conn. 909, 701 A.2d 327 (1997). (Transcript 5/8/01 [Tr. I] p. 70.)
Sometime after the Supreme Court's final action, but before October 1, 1997, Woods, representing Breiner, submitted to the Housing Session of the Superior Court, a writ of execution form prepared by the JUDICIAL Department of the State of Connecticut, "JD-HM-2, Rev. 4-93" entitled "Summary Process Execution for Possession (Eviction)." This writ was signed by the court clerk on September 29, 1997. (Plaintiffs Exhibit [P. Ex.] 13.) In the portion marked "notice to defendant(s) and/or occupant(s), "the form advised that the landlord, identified as Breiner, had won a judgment of eviction and notified the occupants, identified as Vin's Key Club and Larobina, that they must move out of the premises. Said form also instructed the occupants that if they did not move out by the specified date, the sheriff had the right to physically move their "possessions and personal effects and place them on to the street." Id. In the portion of the eviction notice to be completed by the sheriff, the form further advised that if the occupants have not moved out "I will return to move your possessions and personal effects on to the street." Id. These directions and provisions were consistent with the Connecticut Statutes as they stood in September 1997.
On October 1, 1997, Public Act 97-231 went into effect (codified at General Statutes. § 47a-42a) that effectuated a change in the disposition of unclaimed possessions and personal effects of evicted tenants from commercial property. Pursuant to the Act, unclaimed possessions and personal effects were now left in the control of the landlord, and in fact were forfeited to the landlord if removal and storage costs were not paid by the tenants within fifteen days after eviction.[1]
When Woods received from the court the eviction notice, form JD-HM 2 Rev. 4-93, signed by the clerk, he contacted Kadar and requested that he serve it on Vin's Key Club at the premises as soon as possible. (Tr. I, pp. 31-32.) Kadar left the eviction notice at the leased premises on October 3, 1997, having filled in the date and the time that Larobina and Vin's Key Club must move out as October 7, 1997 at 1:00 p.m. (P. Ex. 13.)
Sometime after Kadar had been given the process to serve, but before October 7, 1997, Woods learned of the aforementioned changes in CT Page 10721 commercial eviction procedures enacted by P.A. 97-231. (Tr. I, p. 32). Woods discussed the law with Kadar, and it was decided that the eviction should be in conformance with it. (Tr. I, pp. 32, 42.) Also, Kadar talked to clerks in the Housing Session and he and Woods learned that the JUDICIAL Department had neither prepared, nor had made available, updated execution forms in conformance with the new law.[2] (Tr. I, pp. 32, 44, 75, 127.)
Larobina received notice of the eviction at least by October 5, 1997. (Tr. I, pp. 133-34.) He spoke to Kadar and was told that the property would be put into the possession of the landlord and that it was not going to be put on to the street. (Tr. I, pp. 105-6, 135.) When Larobina's possessions and personal effects were not removed from the premises by October 7, 1997, the locks were changed. Eventually, Larobina's athletic equipment was taken apart and stored, along with some of his personal records, in two trailers adjacent to the premises under Breiner's control.
 Discussion
The gist of Larobina's claims is that by serving a writ of execution advising that a tenant's possessions would be removed to the street, Kadar was obligated to do just that. In the alternative, Larobina argues that Kadar had the obligation to at least advise him that property left on the premises would be put in the possession of the landlord. Larobina alleges that he suffered from injury because he was not notified that his possessions would not be placed on to the street. He claims that the placement of the property, mostly Nautilus-type equipment, in possession of the landlord had the effect of giving Breiner unwonted leverage in the still ongoing conflict between them and forced him to capitulate and settle all pending claims against Breiner. (Tr. I, pp. 136, 141; Plaintiffs memo of March (sic) [read May] 30, 2001, pp. 17-18.) This allegation rings exceedingly hollow for a number of reasons. First, Larobina knew, or should have known, that eviction was a real possibility as far back as April 1996, when Judge D'Andrea ordered it. Second, eviction became a certainty after the Supreme Court denied any further appeal on September 18, 1997. Third, the law required Larobina to "forthwith remove himself' from the premises. General Statutes § 47-42a (a). However, in all of this time period, Larobina did nothing to comply with the law or to protect his property.
Larobina's argument is, in fact, a very narrow one: that he was misled as to the actual disposition of his property from October 5, 1997 to the date Kadar advised him that it was not going on the street. When this advisement occurred is not clear from the testimony or from the documentary evidence. There is evidence that Larobina could have known CT Page 10722 about the disposition of his possessions on October 7, the date he testified that he talked to Kadar; Transcript (5/9/01) [Tr. II], p. 27; or on October 9; P. Ex. 24, the date of Larobina's letter to Woods. Assuming that Larobina did not find out that his possessions would be in the control of Breiner until as late as October 9, the court finds that this period of misinformation was not the fault of Kadar. He was given a writ of execution to serve, and he served it. Furthermore, in Kadar's first direct contact with Larobina he explained that since the court had signed the writ, the law had changed and, in fact, the property would stay with the landlord.
The court finds Larobina's claims unsupported by the evidence or the law. While it is unfortunate that the Judicial Department writ of execution form served by Kadar did not reflect the law as of October 1, 1997, the writ became effective when it was signed by the clerk. The court has not been directed to, nor has it found any authority for the proposition that Kadar violated the law by serving the writ after October 1, 1997, even though the writ's language became slightly outdated. Kadar was informed by Woods and by a Housing Session clerk that he should follow the dictates of PA 97-231 and not place the tenant's possessions on the street. In these slightly unusual circumstances, the court holds that Kadar acted appropriately by leaving the property on the premises and turning control of the premises over to landlord Breiner. See General Statutes. § 47a-42a. Kadar was faced with the choice of following the precise words of the outdated writ, which he knew did not reflect the law as of October 1, 1997, or to act in accordance with the new law and to so advise Larobina. He made the correct choice in following the latter course, and the court holds that he cannot be held liable for that choice.
In addition, the court finds that the injuries and damages claimed by Larobina were not caused by Kadar's action. Larobina had ample opportunity to avoid the scenario that is the basis of his complaint; instead, he chose to be intransigent. Evidently, the Nautilus equipment had been standing unused at the premises for several years. However, according to Larobina, it required disassembly before it could be removed from the premises. While Larobina knew how to disassemble the equipment, he did not do so. Larobina also claimed he had the wherewithal to pick up the equipment almost immediately if it was left on the street. (P. Ex. 15.) It may well be, as counsel for Goldman, Gruder suggested, that Larobina was looking for someone else to bear the expense of taking the Nautilus equipment apart and removing it from the second floor premises on to the street. Furthermore, under the October 1997 version of the commercial eviction statute, Larobina could have obtained all of his property by paying a reasonable storage fee. In fact, if he had offered the fee on October 7 or any time thereafter, the Nautilus equipment and CT Page 10723 other property would have been released to him. (P. Ex. 16.) To the contrary, however, Larobina refused to make such an offer. (Tr. I, pp. 142-143). Rather, Larobina wrote Woods offering to remove his property from the premises in nine weeks without paying any storage charges. (P. Ex. 24.)
In any event, Larobina clearly understood that the presence of his property on the premises after October 7, 1997 was in violation of the law and its manifestation, the eviction order. (Tr. II, p. 18) Whatever injuries suffered by Larobina were not the result of any wrongdoing by Kadar; rather they were the result of Larobina's conscious choice of either not removing his property before the eviction date or not paying minimal storage charges after the eviction.
Finally, Larobina's claims of slander are based on the purported defamation made by Kadar on the videotape which was taken as part of the required inventory. See General Statutes § 47a-42a (c). The court has reviewed the complete videotape and finds that nothing said by Kadar that is audible on the tape is defamatory.
 Conclusion
Based on the foregoing, the court orders that the complaint against Kadar is dismissed. That dismissal makes the third party complaints moot, and they are dismissed as well.